Justin Armijo v Costco Wholesale Corporation, et al

Plaintiff Suit Submits Action Against Costco for the following separate and individual wrongful acts or infringements on Plaintiffs rights leading to this civil liability action(s), with the corresponding amounts of monetary damage sought for each count.

| | |
|---|---|
| #1 DISCRIMINATION AGAINST PLAINTIFF BASED ON DISABILITY | $10,000.00 |
| #2 PERSONAL HARASSMENT OF PLAINTIFF | $10,000.00 |
| #3 RETALIATION AGAINST PLAINTIFF | $10,000.00 |
| #4 SEXUAL HARASSMENT AGAINST PLAINTIFF AND PLAINTIFFS WIFE | $10,000.00 |
| #5 FAILURE TO TRAIN / EDUCATE #140 MANAGEMENT REGARDING UNDERSTANDING PLAINTIFF/EMPLOYEE DISABILITIES AND NEEDS | $10,000.00 |
| #6 UNFAIR BIAS AND DEMOTION OF PLAINTIFF WHILE DISABLED | $10,000.00 |
| #7 PLAINTIFF'S PAIN AND SUFFERING | $10,000.00 |
| #8 BREECH OF CONTRACT OF EMPLOYEE HANDBOOK | $10,000.00 |
| #9 FAILURE TO PROMONTE OR MAKE PLAINTIFF FULL TIME | $10,000.00 |
| #10 CONSPIRING AGAINSG PLAINTIFF BY MANAGERS & WITH HEMIC | $10,000.00 |
| #11 RIDICULE, HAZING, CONDESENDING STATEMENTS TO PLAINTIFF | $10,000.00 |
| #12 PSYCHOLOGICAL ECONOMIC DAMAGE & STRESS TO PLAINTIFF | $40.000.00 |
| #13 FAILURE TO INSURE OR PROTECT PLAINTIFFS SAFETY | $10,000.00 |
| #14 FAILURE TO INTERVENE OR ADDRESS PLAINTIFF CONCERNS AND COMPLAINTS ABOUT #140 MANAGEMENT ACTIONS | $10.000.00 |
| #15 FAILURE TO INSURE PROPER OVERSIGHT OF #140 MANAGERS BY REGIONAL VICE PRESIDENTS ON BEHALF OF PLAINTIFF | $10,000.00 |
| #16 FAILURE TO INSURE PROPER OVERSIGHT OF #140 MANAGERS BY AREA MANAGERS ON BEHALF OF PLAINTIFF | $10,000.00 |
| #17 PUNITIVE AND COMPENSATORY DAMAGES FOR PLAINTIFF | $50,000.00 |
| #18 VIOLATION OF PLAINTIFF'S MEDICAL RIGHT TO PRIVACY | $10.000.00 |
| #18 EXPENSES /COSTS ATTORNY FEES @ 40% OF TOTAL DAMAGES | $100,000.00 |
| | ---------------- |
| | $350,000,000.00 |

INTRODUCTION:

PLAINTIFF CONTENDS THAT COSTCO MANAGERS HAVE A HISTORY STRINGING OUT THE LITTLE GUY OR INDIVIDUAL EMPLOYEE'S WHO BECOME INJURED ON THE JOB IN ORDER FOR THEM TO DROP OR AVOID A WORKMAN COMP CLAIM, QUIT, OR JUST GO AWAY. PLAINTIFF ALSO CONTENDS THAT THERE IS THE PROPENSITY FOR COSTCO MANAGERS TO COLLABORATE WITH EACH OTHER FOR WHAT IS THOUGHT TO BE THE GOOD OF THE STORE AND TO INTIMIDATE EMPLOYEES TO COOPERATE AGAINST THE EMPLOEE'S RIGHTS OR BEST INTERESTS UNDER THE GUISE OF WHAT IS SAID TO BE IN THE BEST INTEREST OR FOR THE GOOD OF THE STORE. THUS DISREGARDING EMPLOYEE'S AND THEIR RIGHTS BY INTIMIDATION, HARASSMENT, DISCRIMINATION, AND MORE. THIS IS DONE WITH THE UNDERLYING ATTITUDE THAT THEY ARE "GOLIATH" AND THE MEANINGLESS PLAINTIFF OR EMPLOYEE IS "DAVID" LEADING TO A POWER AND CONTROL STANCE THAT LOOKS TO STRING A PLAINTIFF OR EMPLOYEE OUT TO BE CRUSHED FINANCUALLY, PSYCHOLOGICALLY, AND PHYSIOLOGICALLY IN THE AFTERMATH OF THE PLAINTIFF OR EMPLOYEE'S BEING INJURED WHILE WORKING AT COSTCO.

THIS GOLIATH NAMED COSTCO WITH AN AVERAGE INCOME OF 167.5 MILLON PER YEAR STANDS TO EARN A MINIMUM OF 5,799.5 MILLION IN THE 35 YEAR LIFE EXPECTANCY OF THIS LITTLE GUY DAVID OR THIS PLAINTIFF, WHO STANDS TO EXPERIENCE THE LOSS OF MOBILITY, ARTHRITIS, AND PHYSICAL AND PSYCOLOGICAL PAIN AND SUFFERING FOR THOSE SAME 35 YEARS AFTER JUST HAVING JUST LOST HIS MARRIAGE AND CHILD BECAUSE OF THE FINANCIAL CRISIS THAT COSTCO HAS CAUSED THIS PLAINTIFF.

IT IS CRYSTAL CLEAR THAT THE COSTCO DOES NOT GIVE A DAMN ABOUT THE LITTLE GUY / PLAINTIFF HERE AFTER RUINING HIS LIFE, FINANCIAL LIVELYHOOD, AND BREAKING UP HIS FAMILY. IT IS CLEAR THAT COSTCO AND IT'S MANAGERS ARE HEARTLESS WHEN IT COMES TO THEIR "REPLACEABLE EMPLOYEES. MANAGERS APPEAR TO BE OPERATING OFF OF THE "GOOD OL' BOY" CONCEPT OF AN INNER CIRCLE THAT CONTROLS EMPLOYEE CIRCUMSTANCES AND HAND PICKS THOSE THAT THEY WILL ALLOW TO WORK WITH THEM. THIS AT THE EXPENSE OF THE PLAINTIFF AND OTHER EMPLOYEES. THERE APPEARS TO BE A PREPONDERENCE OF EVIDENCE DEMONSTRATING THAT COSTCO OPERATES ONLY IN THE INTEREST OF THE COMPANY REGARDLESS OF AND AT THE EXPENSE OR THE BEST INTEREST, DISABILITIES, NEEDS, OR RIGHTS OF IT'S EMPLOYEES. THIS BEING DONE WITH THE OUTLOOK OF ESCORTING THE EMPLOYEES THAT ARE NOT IN THE INNER CIRCLE OUT THE DOOR BY GETTING THEM TO QUIT, FIRING THEM IN ORDER TO SIMPLY REPLACE THEM AND START DOING THE SAME THING OVER AGAIN WITH A NEW EMPLOYEE. COSTCO NEEDS TO BE TAUGHT THAT THEY CANNOT EXPLOIT EMPLOYEES, TREAT THEM LIKE TRASH TO BE THROWN AWAY AFTER BEING USED AND ABUSED BY MANAGEMENT MODIS OPERENDI.

BACKGROUND{

REFERENCE TO "COSTCO(S) INTENEDED TO INCLUDE COSTCO WHOLESALE CORPORATION, COSTCO(S) REGIONAL VICE PRESIDENTS, COSTCO(S) AREA MANAGERS, COSTCO(S) STORE # 140 MANAGERS, AND COSTCO EMPLOYEE CONTRACT / HANDBOOK.

Once Plaintiff experienced being injured while working at store #140"bias", "discrimination", "harassment" and other negative management practices and management tactics like false or contrived "counselling's" or "write up's", letters supposedly written by one manager and then signed by another or false or fraudulent perhaps forged requests for leave from Costco managers ensued on a continual basis.

#1

Plaintiff contends that Costco has violated the Fair Employment and Housing Act (FEHA) with this plaintiff, as it is illegal for an employer of 5 or more employees to discriminate against employees or retaliating against them because they have asserted their rights. FEHA also prohibits "Harassment" against the "protected category" of Disability.

#2

Plaintiff contends that Costco has a "Hostile Work Environment" and makes a claim under this hostile work environment for "Harassment" and "Costco's Failure to Prevent Harassment".

Managers subjected Plaintiff to a course of verbal Harassment based on his Disability culminating in an incident May of 2016 where a customer spilled a large drink on the opposite side of the outside door plaintiff was working. The co-worker did not know the procedure nor did plaintiff, as neither one of was actually trained to work the exit door. I plaintiff managed to get a call to maintenance for them to bring a mechanical floor sweeper that was used for spills like this. When management heard that the sweeper was needed, Brandy another Manager went to plaintiff instead and stated "Kim/ Manager said for you to clean it up" This was a three(3) foot by four() foot large mess that needed an industrial machine. My work restrictions that had been given to them showed that "kneeling down" was one of the restrictions involved in the recovery of my injury, which I brought to her attention. She left and went to speak with Kim. Kim (wearing a red coat), with Eric (employee/witness) ten cam up to me and she forcefully pushed a cleaning solution and a rag at my person with apparent malice and said "clean it up". Previously, Kim had forced an issue in directing me to "open or lift" the large sliding steel exit and entry doors up and I explained my work restrictions that had been given to them showed that "lifting" was one of the restrictions involved in the recovery of my injury. She did not care and again directed me to lift open the sliding steel doors and walked off. She told plaintiff " you don't have any work restrictions". The work restrictions were actually already on file with Costco. I was fortunate that one of my co workers was there and understood I was injured, and he opened the large heavy sliding steel doors.

#3

One of the managers/supervisors named Tom from an intimidation and physical harassment stance physically walked directly into the plaintiff's left shoulder for no logical or apparent reason other than harassment. Plaintiff at a later date saw Tom and his wife at KTA Market, at which point Tom's wife shouted out across several store isles "Hey Justin, are you still working at Costco, we don't see you any more". This demonstrated that my personal file and medical information had been shared with Tom's wife by Tom, which was a violation of my Federal Civil Right to Privacy.

Plaintiff contends that Costco has demonstrated " a long sustained pattern of severe and pervasive harassment and inappropriate conduct directed at the plaintiff beginning in 2016. This was memorialized in plaintiff letters to Costco bringing these issue to the attention of Costco Corporate. Plaintiff contends that these claims are based on up to 7 separate incidents or patterns of this negative management conduct involving both Garrett Tong and Carl Carrillo.

Numerous letters from plaintiff have been sent to Costco Corporate defining the incidents of Harassment and Discrimination to bring the issues to the attention of Costco Corporate and specifically requesting the involvement of Costco Corporate to request their Costco Regional Management to become involved and or to point out the need for a Costco Regional Manger to come to store #140 to speak to the plaintiff. Costco Corporate simply ignored the plaintiff's letter and the discrimination and harassment worsened as retaliation for anything being said to Corporate. Plaintiff then continued to be treated in a negative manner. Perhaps Corporate felt that #140 management would handle the matter and correct their incompetence, which showed "negligence" on the part of Corporate, because that is all they did "which was the equivalent of them having done Nothing."

The issues identified to Costco Corporate in the letters included "Harassment", "Discrimination", "Disability Harassment", "Disability Discrimination", "Intimidation Tactics", "Retaliation", as well as other issues having to do with "failure to honor doctors work restrictions".

#4

Costco managers made comments ridiculing and putting down the plaintiff with the following statements:

(a) "what you're going to fill out a bumps and bruises report for your injury". This was when plaintiff asked for the form to report a workman comp injury. So rather than Costco management assisting an injured employee with the proper procedure to address the plaintiff's on the job injury the manager mocked, ridiculed, and put down the plaintiff as if the plaintiff was a sissy for not just sucking it up and go on working at the expense of the plaintiff's health and wellbeing. This was said by manager Randle Lockwood. It was Randel's responsibility to take me to the office to complete the workman comp claim and he failed to do so. Right after this the retaliation to plaintiff was to be moved to the front of the store, where he was expected to lift water and other things. This was right after Randel Lockwood reported to Carl Carrillo that I wanted to complete a workman comp claim.

(b) "the needs of the Costco store come first and your just going to have to take one for the team versus having your work restrictions". This was said by Curtis/manager when I was being told that my "usual and customary work hours and days and not doing any 8 hour days in a row" were being ignored and I was made to do numerous 8 hour days in a row, which ended up being counter productive to plaintiff's physical therapy and doctors work restrictions. This prevented me from being able to recuperate.

Plaintiff was advised by Antoine a previous employee of 8-10 years that "the Costco #140 managers have a pattern of moving employees to the entrance and exit doors in order to continually watch them and then do anything to find a way give them "counseling forms" and "write-up's" and ultimately to fire them. Antoine said that being put to member services was "punishment" and was essentially the "hazing process" done by the fraternity. Plaintiff was punished for witnessing a female customer for stealing and bringing the issue to managers and the woman thief made a big scene and managers were at issue and instead of prosecuting the woman they didn't want to do anything to prosecute her and they turned on plaintiff for doing his job and moved him to member services because the woman became upset. Plaintiff stated: "This is exactly what they did to me.

I would be knit picked for every single thing he did, inclusive of using the restroom and was immediately hearing his name over the walkie talkie, and found himself having to explain simply going to use the restroom. Plaintiff stated: "Robin one of the morning mangers, came up to me one morning and said: "Oh Justin, you still work here….I'm surprised they haven't fired you yet".

After being switched from loss prevention to member services, he was told by Elaine / manager for member services stated: "Hey Justin, you're really good up here, we didn't think you'd to be this good up here". Plaintiff wondered "who is we"

Plaintiff called in sick on one day to Tim Wiley #3 in the chain of command, telling him that his back was hurting due to consecutive days of three 8 hour shifts. The next day plaintiff went to work and went into the workroom and "Pammer" from member services, asked plaintiff "Justin, how's your back. No one else besides Tim Wiley knew about my back and it showed that managers shared his personal medical information with the employees when it was none of their business and a violation of my Federal Civil Rights.

Costco Corporate's chain of command method of handling the plaintiff's letters, issues, complaints accomplished nothing for the plaintiff and due to them always leaving the issues or complaints about the #140 managers, the #140 managers took care of the matter with anger and malice towards plaintiff making things worse for the plaintiff. Costco Corporate's negligent method of leaving the correction and monitoring of the perpetrators to the perpetrators only succeeded in making the plaintiff afraid that further complaints to Costco Corporate would not be directed to a Regional Vice President or an Area Manager, but that the plaintiff's complaints and concerns would only make it back to the same #140 managers who were the perpetrators and my coworkers that somehow knew my medical issues. Plaintiff states: "I feel that after making complaints or bringing the issues to Costco Corporate's attention about the "refusal of #140 managers to honor my work restrictions" that the #140 supervisors just used their opportunity given to them by Corporate to "just throw it back in my face, treating my complaints and concerns like they were a joke" and perhaps telling other supervisors " to ignore plaintiffs work restrictions". Plaintiff stated: "this made me feel like I was being targeted in a rude, inconsiderate, and callus manner making it extremely uncomfortable to come to work on a daily basis".

Plaintiff was told that it was career suicide to fill out a workman comp claim. Kyle injured himself lifting cases of beer over the conveyer belt and said "I'm going to suck it up because I need the job. Managers knew he hurt his back and did not do a workman's comp claim. Now Kyle is a supervisor. Michell is who told plaintiff that a workman comp claim was suicide. Michelle injured her shoulder and stated: "Hey I need the money and a workman's comp claim is career suicide", so she did not complete a claim. Now she is doing special things at Costco and has a walkie talkie. Plaintiff viewed that things at Costco are like a fraternity and that after bringing up the workman comp claim plaintiff stated: "I was blacklisted from that time and Costco enemy #1.

#5

SEXUAL HARASSMENT:

Plaintiff indicates that: "through 2018-2918 Carl Carrillo / manager began a sustained and disgusting habit of making rude, derogatory, sexual comments. He was referring to my wife with these comments

and he continued to make these sexually suggestive comments about her whenever she and I would go to #140 to shop. His comments were dirty and unclean". Plaintiff stated: " It was clear per my empirical observation of Carl Carrillo that these comments were motivated by his perception of my wife's body and her physical appearance." "These comments were sexual, derogatory, perverted, and totally out of line for a Costco manager". Plaintiff stated: "I took serious offense to Carl's comments and it angered me to the point where I actually wanted to kick his ass for being so crude and inconsiderate to my wife and I". Plaintiff stated: "I cannot say with precision how many times Carl made these comments, but he made them with equal frequency each time I saw him at #140, while I was shopping with my wife." Overall, Plaintiff stated "He made them regularly during my employment at Costco." "Carl essentially began a pattern of pointing out my wife to me in the warehouse with his sexual comments because he found her physically and sexually attractive." Plaintiff stated: "To my knowledge Carl did not make these comments about other female customers or co-workers." "These comments were always sexual and totally unwelcome. I perceived that he was pointing out and commenting about my wife to me in hopes that I might possibly agree with him, based on his perverted and misguided sexual orientation.". " I kept silent because I felt intimidated because he was the manager and I did not report the comments because I sensed Hostility from Carl and was afraid of more retaliation or him firing me and being out of work". Plaintiff perceived these comments regarding his wife, who Carl viewed as physically and sexually appealing to be a continuation of his harassment and expressions of his desire for my wife sexually. Plaintiff felt that Carl's comments were sexist and biased against he and his wife. Plaintiff felt that Carl was suggesting that men are entitled or supposed to sexually exploit women, and that his tone of voice and body language were sexually suggestive and derogatory. Plaintiff felt that Carl's actions both verbally and physically demonstrated his awareness and desire for his wife sexually and that it also demonstrated his total disregard for her as a customer, a woman, and as the plaintiff's wife and plaintiff as a Costco employee. His actions were contrary to common decency and the Costco Employee Contract Handbook.

#6

ADMINISTRATIVE COMPLAINTS:

(a) Plaintiff alleges that Costco denied plaintiff with a work environment free of discrimination and retaliation, due to plaintiff's disability.
(b) Plaintiff alleges that Costco failed to provide training to help managers understand work related disabilities, proper employee relations, and how to understand the necessary accommodation needs of disabled or partially disabled employees, and the limitations and work restrictions of employees and their limitations. Curtis / manager (front end of store) stated to plaintiff in the presence of a female manager and "Boss / Jeffrey" a maintenance worker, in the partial cubical to the right at the entrance to the administrative area. Curtis stated to plaintiff at that time: "Justin, I'm not a doctor, I don't know your work restrictions"  The last day when plaintiff was demoted and unlawfully terminated Ann Kamura stated in the presence of Paul Karnuth: " Justin, you don't have any work restrictions".
(c) Plaintiff alleges that: Costco failed to insure from an oversight or company management basis that the Reginal Vice President or the Area Regional Manager for the Big Island made themselves known or available to himself or any other employees in #140 in order to make certain that poor management biases and practices do not continue to take place or that they

would be there to correct these issues in order to avoid litigation. Plaintiff brought up the need for this in one of the letters plaintiff sent to Costco Corporate.
(d) Plaintiff alleges Failure on the part of Costco Corporate to intervene to insure that plaintiff's work restrictions were complied with properly.
(e) Plaintiff alleges failure on the part of Costco Corporate to take action on behalf of, or respond to plaintiff after receiving written advice from the plaintiff that these issues, concerns and problems with Harassment, Discrimination, Retaliation, Intimidation and more were rampant at #140.
(f) Plaintiff alleges that Costco Corporate failed to implement the proper oversight monitoring and provide the proper training to Area Mangers and #140 managers that would have insured that they were actually taking care of all employees and abiding by the Costco Employee Contract Handbook.
(g) Plaintiff alleges that Costco Corporate failed to insure the #140 managers created and fostered an "employee friendly work environment free of Harassment, Sexual Harassment, Hostility, Retaliation, Ridicule, Mockery, Mental and Physical Intimidation, and Discrimination.
(h) Plaintiff alleges that Costco Corporate had a failure and a refused to acknowledge the plaintiff's concerns or respond at all to plaintiff's concerns forcing plaintiff to complain to the EEOC for a Right to Sue Costco due to Costco's gross negligence in regarding plaintiff as a Costco employee. This demonstrated to plaintiff that Costco did not give a damn about management / employee relations or Human Relations at all, regardless of having a Human Relations Department.

#7

CAUSES OF ACTION AGAINST COSTCO:

(a) Verbal and physical harassment
(b)  (b) Sexual harassment regarding plaintiff's wife and plaintiff
(c) (c) Demotion while injured / disabled in violation of FEHA, (d) Failure to prevent harassment in violation of FEHA.
(d) Negligent management - Negligent Supervision of Regional Vice President(s), Area Regional Managers, #140 Managers'
(e) Failure to properly train and or Hire of Regional Vice President(s), Area Regional Managers, #140 Managers regarding oversight in areas of employee work related injuries, disabilities, work restrictions and limitations, or Human Relations in a way that benefited employees.
(f) Failure to hire Regional Vice President(s), Area Regional Managers, #140 Managers'
(g)  managers with proper education, experience, experience, patience, and intelligence for them to properly consider injured employee disabilities, work restrictions, limitations, and needs.

UNFORTUNATELY, COSTCO HAS INEXPERIENCED AND UNEDUCATED MANAGERS, WHO DON'T REALLY UNDERSTAND MANAGEMENT PRINCIPALS. THE RESULT IS AND HAS BEEN ARBITRARY, ABUSIVE BEHAVIOR TOWARD THE PLAINTIFF AND OTHER INJURED EMPLOYEES.  POOR MANAGEMENT HABITS ARE LEARNED AND PART OF THE CULTURE AND REINFORCED BY PEOPLE WH DON'T KNOW ANY BETTER, AND LIKELY HAVE NOT HAD THE OPPORTUNITY TO LEARN ALTERNATIE METHODS, AS WITH ALL THE COSTCO MANAGERS INVOLVED WITH THE PLAINTIFF AND THE MANAGEMENT OVERSEEING THE MANAGERS THAT WERE DIRECTLY INVOLVED WITH THE PLAINTIFF.

(h) Failure of Costco Corporate to provide proper training, or not providing any training at all to Regional Vice President(s), Area Regional Managers, #140 Managers, which has left or relegated #140 employees to Costco management incompetence. Anything done to date is a classical example of mistaking activity or true Human / Employee Relations for accomplishment. TRUE MANAGEMENT LEADERSHIP AT COSTCO IS SEVERELY LACKING OR NON-EXISTANT.

(i) Retaliation by demoting plaintiff while injured and disabled, due the on the job, work related injury causing a loss of pay, loss of medical / dental / vision benefits, loss of sick days used to avoid repetitive 8 hour days contrary to doctors work restrictions. This in violation of the Family and Medical Leave Act (FMLA) of 1993, 29 U.S.C. 2601 et seq. ( FMLA interference claim). There is also the direct correlation or proof regarding the incident where plaintiff was working outside security and asked to sit in his car and work from there as a non-obvious observer. H was speaking to James another outside employee, while during open Costco hours where the large sliding doors were open. He was given no training for this position. Due to this situation plaintiff was given a "counseling" and was told that it was at a time when the sliding doors were closed, which was not the case., this led to a fabricated or fraudulent "write up" and ultimately contributed to plaintiff's demotion and decrease in pay. Managers involved here were Hoku, Carl Carrillo, and Ann Kamura. Paul Karnuth, and Lynn in Human Relations.
Ann Kamura acted with hostility and apparent ill feelings or malice or animus. but was not acting alone, she issued the demotion after consulting with other managers

(j) Discrimination based on the American with Disabilities Act, 42 U.S.C. 12101 et seq, (ADA), and a claim for Failure to accommodate under ADA for the following reason(S): Costco demoted plaintiff after a workman compensation injury as retaliation for making the workman compensation claim in an adverse employment action. Plaintiff contends that "There is a Direct and more than Casual Connection as Proof of this Claim between the Soda Spill Incident with Costco management and Plaintiff's Demotion, Decrease in Pay, Loss of Medical / Vacation / 401 K Benefits. Ann Kamura refused when asked by plaintiff to provide plaintiff with a copy of the demotion paperwork that she forced plaintiff to sign under duress. Paul Karnuth was a witness to this.

(k) Costco management failure to recognize plaintiffs doctor(s) work restrictions, schedule accommodations that were continually provided to them in writing by plaintiff on numerous occasions. Doctors were Dr. Krector, Dr. Daniels, Doctors at Alii Health, Dr, Chunn, and Dr. Vally. Dr. Daniels was essentially harassed by #140 managers in their refusal to accept or acknowledge the work restrictions and repeatedly demanding that he re-do the work restrictions by telling plaintiff that "the work restrictions were too vague", "I don't understand what your doctor wants us to do", " Justin, you don't have any work restrictions", " the needs of the store are more important than your work restrictions, you need to take one for the team".

(l) Costco conspired with their insurance company against the plaintiff and Costco Human Relations person Lynn actually confirmed this by stating to plaintiff: "Ester Tugurian at the insurance company told me "Don't change justin's work schedule regarding the work restrictions" This was after Costco and the insurance company had been provided with my doctor ordered work restrictions indicating to "give plaintiff his usual and customary work schedule, with restrictions on kneeling, lifting, etc". Costco advised plaintiff that they did not understand what his "usual and customary work schedule" was. Plaintiff for two(2) years worked four 6 ½ hour and one 8 hour day only. The usual and customary work schedule was

quite obvious to Costco #140 managers, although further harassment dictated to ignore it, and give plaintiff numerous 8 hour days in a row, contrary to plaintiffs doctors advice for recuperation. Plaintiff was not given his Right to Recuperate.

(m) Costco failed to provide reasonable accommodations for plaintiff's disabilities. A "reasonable accommodations claim" derives directly from the ADA statute. Plaintiff established by virtue of consultations with four(4) doctors that plaintiff was a "Qualified Individual with a Disability" and Costco failed to provide reasonable accommodations. (Plaintiff was advised by Pete/owner of Ultimate Electric in Kona, that he knew someone that was injured at #140 on the job and got screwed over by Costco, in the same way plaintiff was now).

(n) Discrimination against plaintiff for asserting plaintiff rights: Discrimination of any kind is both unpleasant and unnecessary and it certainly has no place in the workplace at Costco. Never the less it exists at Costco and goes on without Corporate intervention on behalf of this plaintiff or other employees. Plaintiff did his job and followed the rules, so why should he and or his wife have been treated differently than other employees doing their job at #140. This plaintiff was made to feel uncomfortable in the Costco work place as a direct result of making a workman comp claim, his on the job injury, his disability as a result of his on the job injury, his advocating for himself, his questioning why his work restrictions were totally ignored and not being honored, and because of his wife's physical appearance being twisted into sexual harassment by Carl Carrillo, plaintiffs supervisor and Costco manager. This behavior by Costco managers should never have taken place, should not be tolerated, and unfortunately it falls to this plaintiff and other victims to challenge the Costco managers, who discriminate, harass, and conspire against them for simply looking out for themselves and their disabilities. (Bloomberg BNS v Costco June 9, 2014)

The Sexual Harassment by Manager Carl Carrillo made plaintiff and his wife feel uncomfortable, due to it being rude and totally unwanted, and due to the fact that it was sexual in nature and totally unprofessional for a Costco manager or anyone else. This inappropriate conduct did not stop and was repeated whenever plaintiff shopped at #140 with his wife. Plantiff and his wife noticed that Carl Carrillo would follow them and then ultimately approach them to make sexual statements to plaintiff. This was not previously reported to Costco, due to plaintiffs fear of retaliation from Carl Carrillo, and the previous experience with having reported anything to Costco in order to gain intervention or any help with plaintiffs situation(s). This also due to the fact that Carl Carrillo was plaintiff's direct manager/supervisor. Plaintiff viewed that Carl Carrillo felt entitled to speak to the him and make these sexual comments because of his manager position of power and control over plaintiff as a mere employee. Each time plaintiff entered #140 he noticed Carl and other managers overtly and obviously watching he and his wife through the store aisles. Carl was essentially stalking plaintiff and his wife, and plaintiff and his wife were intimidated and fearful of this store manager. The Harassment continued on shopping instances all the way to the check out register, further demonstrating the Hostile Environment towards plaintiff, whereas, upon checking out and paying for the purchased merchandise the plaintiff was told that "your receipts for purchases need to be taken to a manager for approval of any purchases made by plaintiff.

The EEOC states that harassment is unwelcome conduct that is based on a number of characteristics, including disability, and that behavior can become unlawful when the conduct is severe or pervasive enough to create a work environment that a reasonable person would consider hostile or abusive.

(m)   Plaintiff received fraudulent, contrived, conspired, or illegitimate reprimands of "counseling" or "write up's" in retaliation for pointing out his work restrictions, and limitations to several managers. These were disciplinary actions take against plaintiff in response for plaintiff trying to inform managers of his rights or assert his rights, due to plaintiff's disabilities. Harassment in this case was overly sexual towards his wife, the verbal mocking and ridicule was in front of customers and co-workers and it created a hostile work environment. (7th Circuit VII

(n)   Failure of Costco of Regional Vice President(s), Area Regional Managers, #140 Managers to be proactive in preventing and addressing plaintiff's Hostile Workplace Complaints and claims. Costco Human Resources failed to put in place any or a variety of strategies to correct these wrongdoings.

Experts in this area suggest that HR or the Corporation implement anti-harassment training for both employees and managers and adopt robust reporting mechanisms, and obtain visible buy-in from senior leadership to correct these culture failings. Costco failed to accomplish or attempt this.

(o)   From an EEOC stance and ADA protection the plaintiff's claim is that Costco discriminated against the plaintiff and his wife by allowing or "creating and tolerating a sexually hostile work environment. During this time, the plaintiff was demoted, received a cut in pay, a loss of all benefits, a loss of 401 K participation, had all work restrictions ignored, and was taken off the work schedule without pay, and experienced a forged request to be on leave without pay and refusal to provide him with a copy of this request. Plaintiff never made such a request nor signed such a request. If one exists it is fraudulent and his signature is forged by Costco #140 management. THIS ADDS FORGERY TO THIS CLAIM.

Costco Corporate was made aware of these issues by direct complaint communication from the plaintiff; therefore since Costco Corp was aware of the issues that the plaintiff was experiencing or was negligent and should have been aware, due to the direct communications advising them of Harassment and Discrimination at #140. Costco Corporate had an Administrative and Affirmative Obligation to

The ADA prohibits discrimination against people with disabilities, especially where employment is concerned.

stop and remedy the hostile work environment caused regardless of whether the discrimination and harassment was caused by another employee or a Costco manager.

BALANCE OF COMPLAINT SHOWN ON HAND WRITTEN PAGES NUMBERED # 16 THROUGH #23 ARFE ATTACHED AS TIME DID NOT ALLOW FOR TYPING TO GET FILING MAILED TO ARRIVE BY 9/6/2019

RESPECTFULLY, JUSTIN ARMIJO = IN PRO SE

(16) ADA prohibits discrimination against all people with disabilities, especially where employment is concerned.

Costco has an Employee Handbook that is essentially a binding contract and written agreement between Costco and the plaintiff as an Employee. Costco failed to provide a safe work environment, failed to prevent discrimination, failed to prevent sexual harassment, failed to prevent discrimination against the disabled plaintiff, and harried to minimize the complaints, concerns, and medical work restrictions + limitations of the Plaintiff.

Costco also failed to protect Plaintiff's medical insurance, vocational pay, pension, 401k or money towards retirement or basic income by refusing to allow plaintiff to work on the no work schedule because Costco was refusing to honor his work restrictions of 4 separate doctors inclusive of the current on DR Unity.

17)

Costco Failed to provide reasonable accommodations for plaintiff at Costco #140 due to his disability and his disability led to him being taken off the work schedule or terminated with a loss of all benefits.

Plaintiff has made numerous verbal and written complaints for the actions his work restrictions, and all managers/supervisors declined and/or refused to acknowledge, accept, or implement the plaintiffs customary work schedule to accommodate.

Plaintiff alleges that Costco violated his civil rights because the actions that Costco managers took was "intentional" and "malicious" and with gross disregard for plaintiffs rights.

Plaintiff alleges that Costco through mismanagement or lack of properly educated management created emotional psychological pain, suffering and mental anguish to the point of having a marriage breakup, that was caused by mgr actions/inactions

caused on

And the denial of reasonable accommodations to the aftermath of plaintiffs injuries at the workplace 1-July

Plaintiff alleges that had all the #140 managers + supervisors received discrimination sensitivity training at Corporate Costco should have provided harassment + discrimination training would not have occurred. The lack of training led plaintiff manager having the impression and regarding the environment a disaster to be

B) Plaintiff was reinforced by manager telling him to "take one for the team" because the needs of the store outweighed the plaintiff's medical needs & work restrictions.

This clearly demonstrated that Costco & its mgrs were really focused on protecting the Costco interests as opposed to an honest intention or actions towards protecting the employee/plaintiff interests, & is liable for [the] doctor's work restrictions. Due to this Costco is responsible for [all] costs associated with the injury including atty costs and the plaintiff's pain & suffering.

Costco's negligence by having plaintiff lift a metal shovel ice machine that was full of water, with each pull weighing an additional 8.34 pounds over the weight of the shave-ice machine and creating additional weight distribution motion to offset balance — the managers should have logically called for a fork lift to bring the shave ice machine down from almost 8 to 8 ft installed to a solid pallet 6 inches off the ground.

(18)

Negligence on Costco's part exists because instead of calling for a forklift to bring their shave ice machine that was full of water, on its own, about a 6 foot level to ground level on a rolling pallet the plaintiff was instructed to bring it down while managers watched him without telling him to do it.

Costco created this hazardous situation that Costco managers should or could have known presented or posed a risk to the plaintiff or should have refrained or should not have directed plaintiff in performing a task that could potentially seriously injure plaintiff. Due to this lack of manager judgement or intelligence the plaintiff was seriously injured (1) plaintiff was injured while working for Costco, (2) plaintiff was directed to perform a function that was hazardous and could potentially seriously injure him, (3) plaintiff was injured, (4) the injuries occurred because of a hazardous condition and negligence on the part of Costco (5) the managers of said property were negligent in their responsibilities to ensure that the plaintiff remained safe.

20. (#6) Costco should have called for a forklift to carry ~~on towing the~~ overweight shaved ice machine full of water from the 6 foot level to the ground. The normal procedure in bringing heavy items from upper levels to ground levels is the use of a ~~fast lift~~ a forklift operator. Costco did not follow normal safety procedures

Due to this plaintiff has experienced extensive meniscal, patella, hamstring injuries of both legs and the issues have been exacerbated by Costco mgrs failing to honor work restrictions ~~failing to give him his weight~~ customary work schedule with restrictions and to force him back to work prior to being recovered from his injuries which still exist

He has developed complex regional pain syndrome which requires continued medical treatment and intervention

2) All this due to the fact that Costco was negligent in handling the proper relocation of their share ice machine that was full of water with a forklift and directed the plaintiff to lift it by himself with no help.

Due to this plaintiff may very well suffer in addition to the auditory injuries, a lifetime of arthritis and pain in his hamstrings, knees, and back because of Costco's negligence and lack of proper management and training.

3) Costco manager/employee observed this hazard and what plaintiff was directed to do and took no action to help, intervene, or prevent plaintiff from getting injured.

22) Failure to promote

Costco denied Plaintiffs promotion to full time and plaintiff understood from previous Costco employees and co-workers that it was a "club" that promotions and movement to management were a "tight knit club" where it was known who was going to get a position prior to it being posted. Plaintiff alleges that the denial of his promotion from part-time to full time looking to management was due to his Disability, his vocally asking questions or advocating for his work restrictions, possibly his race, and his popular interaction with the customers.

23)Arthss Discrimination at Costco occurred in more areas than hostility, harassment, sexual harassment, racial, disability, physical, offensive, sexuality, comments, loss of income and benefits, or work restriction it occurred to plaintiff not only by lack of promotion but actual DEMOTION

Failure to Promote

(23) Plaintiff was asked by coworkers why he was not full time after doing so well at "Loss Prevention". But after doing well at Loss Prevention, Manager(s) moved Plaintiff to work the entry & exit doors whose it was known by employees that is where managers put ones out that they want to fire or let go and that they are orchestrate or try to find reasons for a "counseling" or a "write-up" leading to termination.

Plaintiff was a good employee and was shown numerous customer evaluations of him where customers praised him for doing a great job. Every they changed over Plaintiff was dropped on the job