IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAI`I

_____

JUSTIN WILLIAM ARMIJO,

               Plaintiff,

   v.

COSTCO WHOLESALE WAREHOUSE, INC.,

               Defendant.
_____

)
)
)
)
)
)
)  Civ. No. 19-00484-ACK-RT
)
)
)
)
)
)
)

**<u>ORDER GRANTING DEFENDANT COSTCO'S MOTION FOR SUMMARY JUDGMENT (ECF NO. 120)</u>**

        Pro se Plaintiff Justin Armijo brought this lawsuit against his employer Defendant Costco Wholesale Corporation ("Costco") asserting claims for, inter alia, disability, sex, and race discrimination and retaliation.  Costco has now moved for summary judgment, ECF No. 120.  For the reasons detailed below, the Court GRANTS Costco's motion.

**<u>BACKGROUND</u>**

        For purposes of this Order, this Court uses Costco's Concise Statements of Fact ("CSF"), ECF No. 121, to establish the facts in this case.  Although Armijo did submit an Opposition, he did not include a CSF.  <u>See</u> Local Rule 56.1(g) ("[T]he moving party's concise statement will be deemed admitted unless controverted by a separate concise statement of the

1

opposing party."). While the Court acknowledges that Armijo is proceeding pro se, all material facts in Costco's CSF are deemed admitted because Armijo did not timely file a CSF. See id. Moreover, Armijo failed to submit any admissible evidence in opposition to Costco's summary judgment motion.[1]

## I.   Factual Background

Costco first hired Armijo on October 14, 2014 as a seasonal Loss Prevention clerk in Kailua-Kona. Def. Ex. A-4; Def. Ex. A (Armijo Depo. I) at 13:22-24. Armijo later became a non-seasonal part-time employee. See Def. Ex. A-4. Armijo's duties as a Loss Prevention clerk included identifying and investigating theft threats. See Def. Ex. E. After Costco determined the Loss Prevention position "was not an effective position" and eliminated it in late 2015, Armijo became a Member Service Assistant in January of 2016. Chaparro Decl. ¶¶ 10-11. In this position, Armijo provided after-hours outside security, where his shifts generally ran 1-3 hours after the warehouse closed. Id. ¶ 11. Prior to his injury, Armijo testified that he typically worked four six-hour shifts and one eight-hour shift a week. Def. Ex. B (Armijo Depo. II) at 122:6-21.

---

[1]   The Court notes that Armijo is appearing pro se. Armijo did consult an attorney when he filed his workers' compensation claim, see Def. Ex. D (Armijo Depo. IV) at 372:14-15, and he had an attorney help him with his EEOC charge, see Opp. at 24. Unfortunately, at the critical stage of defending against Costco's summary judgment motion, he evidently did not seek the assistance of an attorney. See Jacobson v. Filler, 790 F.2d 1362 (9th Cir. 1986) (Non-prisoner pro se litigants are subject to the same rules at summary judgment as those represented by counsel).

On May 28, 2016, Armijo injured himself while lifting a shaved ice machine at work.  Def. Ex. A (Armijo Depo. I) at 57:21-58:24.  Armijo did not report the incident to anyone on that day and instead "tried to tough it out."  Def. Ex. B (Armijo Depo. II) at 120:4-15.  On July 25, 2016, Armijo reported his workplace injury to his immediate supervisor, Randall Lockwood.  Def Ex. A (Armijo Depo. I) at 50:24-25; Def. Ex. B (Armijo Depo. II) at 120:4-15.  According to Armijo, Lockwood "brushed it off" and had him fill out a workers' compensation form, which he called a "bumps and bruises report." Def. Ex. B (Armijo Depo. II) at 120:12-15; Def. Ex. A (Armijo Depo. I) at 50:24-25.  Costco opened a workers' compensation claim for the matter, which was overseen by a third-party company, Helmsman Management Service.  Chaparro Decl. ¶ 13. Helmsman Senior Claims Specialist Esther Tugurian was assigned to Armijo's case.  Id.

On July 26, 2016, Armijo's doctor, Julia Krechter, restricted him to "[s]tanding and walking no more than 1 hour a shift – not consecutive walking and standing, [s]tanding for not more than 15 minutes at a time" through August 23, 2016.  Def. Ex. A-8.  As a result, Costco offered Armijo modified light duty through the Costco Interim Community Employment Program ("ICEP").  Chaparro Decl. ¶ 14; Def. Ex. A-10.  Armijo participated in ICEP from August 25, 2016 through September 17,

2016, Chaparro Decl. ¶ 16, when he was removed from the program to return to work with Costco.  Def. Ex. B (Armijo Depo. II) at 133:4-17.  On August 16, 2016, Dr. Krechter wrote that Armijo's "only work restriction" was to work no more than four hours per workday.  Def. Ex. D-65; see Chaparro Decl. ¶ 17.  Based on that note, Costco determined it could accommodate Armijo's restrictions, and as a result, Armijo was scheduled to work on September 19, 2016.  Chaparro Decl. ¶ 18.

Armijo did not report to work on September 19, 2016, and instead submitted to Costco a note from Dr. Chang-Stroman recommending that he see an orthopedic doctor.  Id. ¶ 20; see Def. Ex. G.  Because the note from Dr. Chang-Stroman did not indicate that Armijo could not return to work, the warehouse's general manager-Angelina Chaparro-asked Armijo if he was able to return to work.  Chaparro Decl. ¶ 20.  Armijo responded that he did not know, he would get a second opinion, and he would see an orthopedist.  Id.; see Def. Ex. H.

On November 2, 2016, Dr. Henry Daniels restricted Armijo to any job that did not require "repetitive squatting, kneeling, or stair climbing."  Def. Ex. C-31.  The next day, Dr. Chun submitted a recommendation for "continued physical therapy and a return to work full duty."  Def. Ex. D-64.  Accordingly, Costco scheduled Armijo to work on December 5, 2016.  Shimaoka-

Lopez Decl. ¶¶ 10-11.  Armijo returned to work that day and continued to work through March 2017.  Id. ¶ 12.

On March 13, 2017, Costco received a note from Dr. Daniels stating that Armijo should return to his regular work shifts and hours.  Id. ¶ 14; see Def. Ex. B-16.  Because the note did not clearly indicate what schedule Armijo could work, the general manager at this time-Lianne Shimaoka-Lopez-coordinated with Tugurian to obtain more information regarding Armijo's work restrictions.  Shimaoka-Lopez Decl. ¶ 15.

On March 18, 2017, Dr. Daniels submitted another note to Costco indicating that Armijo should resume the work schedule in place at the time of his injury.  Id. ¶ 16; see Def. Ex. D-61.  Four days later, Dr. Daniels submitted an additional note indicating a work schedule with specific start and end times that Armijo could work.  Shimaoka-Lopez Decl. ¶ 16; see Def. Ex. L.  Shimaoka-Lopez discussed these notes with Tugurian and determined that Costco did not need to accommodate the specific start and end times that Dr. Daniels indicated, but Costco could accommodate a specific number of work hours per day according to Armijo's medical needs.  Shimaoka-Lopez Decl. ¶ 16.  When Costco did not receive a further note from Dr. Daniels regarding Armijo's ability to work a specific number of hours a day, Armijo remained scheduled to work eight-hour shifts in March 2017.  Id. ¶ 19.

On May 12, 2017, Armijo received a counseling notice for failing to respond to multiple calls on his radio while he was performing outside security.  Def. Ex. B-13.  Armijo disputed in his deposition that this incident occurred.  See Def. Ex. B (Armijo Depo. II) at 99:7-102:8.  On May 22, 2017, Costco received a medical note stating that Armijo could work six-hour shifts until his next doctor's visit and was restricted to "light duty."  Def. Ex. D-62; Shimaoka-Lopez Decl. ¶ 21. After this note, Armijo was not scheduled for any eight-hour shifts.  Shimaoka-Lopez Decl. ¶ 21.

Also on May 22, 2017, Armijo was asked to help clean up a drink spilled by a customer at the warehouse.  Komura Decl. ¶ 9.  When Armijo refused and called maintenance to clean up the spill instead, his supervisor-Kim Bryant-"shoved cleaning supplies and products into [Armijo's] body" and asked him, "what, you can't kneel?" in front of 10-15 people.  Def. Ex. B (Armijo Depo. II) at 114:11-115:10; Def. Ex. C (Armijo Depo. III) at 239:19-7.

The next day, Armijo met with the assistant general manager, Ann Komura, to discuss his work restrictions.  Komura Decl. ¶ 9.  Komura discussed the note from Dr. Daniels which indicated that Armijo must "avoid repetitive squatting, kneeling, and stair climbing."  Id.  Komura pointed out that the note only appeared to restrict repetitive squatting, kneeling,

and stair climbing.  Id.  Because the note was not clear on whether Armijo could bend at all, Komura asked Armijo to obtain further information from his doctors on the issue.  Id. ¶ 10. At this meeting, Komura also provided Armijo with an Employee Information Change form, which corrected an internal payroll error that erroneously listed Armijo as a Loss Prevention clerk ($14.00 hourly rate), with a higher pay rate than his current position as a Member Service assistant ($13.50 hourly rate). Id. ¶ 11.  Because of this mistake, Armijo was overpaid by $213.30, but Costco forgave the overpayment.  Takahashi Decl. ¶ 12.

According to Armijo, at this meeting he asked Komura, "do you want me to draw a circle around [the doctor's note] with a crayon so you get it," at which point Komura allegedly "got red in the face."  Def. Ex. B (Armijo Depo. II) at 159:8-19. Armijo claims Komura was "borderline yelling" and that he was "unlawfully terminated" at this meeting, id. at 162:20-25, 163:6-14, 164-165:12, but Komura stated that she did not terminate him and did not have the authority to do so.  Komura Decl. ¶ 13.

On June 10, 2017, Costco received a note dated May 26, 2017 indicating that Armijo was released to work, but could not push/pull or lift/carry any weight, and could not squat, kneel, or climb stairs through June 29, 2017.  Def. Ex. B-19.  Because

7

Costco could not accommodate that restriction in any positions for which Armijo was qualified, Armijo was granted a leave of absence in accordance with Costco's policies regarding medical leave.  Shimaoka-Lopez Decl. ¶ 23.

Komura sent Armijo a letter dated June 28, 2017 on Shimaoka-Lopez's behalf informing him of the approved leave, and requesting that he provide updated medical documentation regarding his ability to work and any work restrictions by July 17, 2017.  Def. Ex. B-20; Shimaoka-Lopez Decl. ¶ 23; Komura Decl. ¶ 14.  Armijo confirmed in his deposition that he received the letter.  Def. Ex. B (Armijo Depo. II) at 156:8-22.

Komura called Armijo on July 20, 2017 to review his job accommodation and transitional duty checklist, and his work restrictions limiting him to push/pull or lift/carry zero pounds.  Komura Decl. ¶ 15.  She again explained that Costco did not have any positions available that could accommodate this restriction.  Id.; see Def. Ex. Q.

Following an independent medical examination from October 28, 2017 through his workers' compensation claim that released Armijo to "return to work full duty," Costco scheduled Armijo to return to work on April 16, 2018.  See Def Ex. C-36; Shimaoka-Lopez Decl. ¶ 26.  When Armijo did not return to work then, Shimaoka-Lopez wrote to Armijo on June 27, 2018 regarding his refusal to return to work and asked for updated

8

documentation to support his continued leave of absence.  See Def. Ex. C-37; Shimaoka-Lopez Decl. ¶ 27.  In response, Armijo requested a continuous leave of absence through August 21, 2018 and provided medical documentation from Dr. Vally indicating that Armijo was on temporary total disability.  See Def. Ex. C-38; Shimaoka-Lopez Decl. ¶ 28.  Costco approved this request on July 30, 2018.  See Def. Ex. C-39; Shimaoka-Lopez Decl. ¶ 29.

In August of 2019, Costco was informed that Armijo was released to work without restrictions based on his most recent independent medical examination.  Shimaoka-Lopez Decl. ¶ 30.  As a result, Costco sent Armijo a letter with his schedule for the week of August 26, 2019.  Def. Ex. C-45; Shimaoka-Lopez Decl. ¶ 30.  Armijo responded with a letter dated August 26, 2019 disputing his ability to return to work based on Dr. Vally's medical opinion.  See Def. Ex. C-46; Shimaoka-Lopez Decl. ¶ 31. As a result, Costco approved Armijo's extended leave of absence on October 4, 2019.  See Def Ex. T; Shimaoka-Lopez Decl. ¶ 32.

Armijo presently remains a Costco employee on a leave of absence since May 23, 2017.  Shimaoka-Lopez Decl. ¶¶ 24, 33; Takahashi Decl. ¶¶ 9, 17; Def. Ex. N.  Armijo admitted that he made a request for leave of absence, signed by him and dated July 7, 2018, together with a cover letter on the same day stating that this was the first request for leave of absence that he had made.  See Def. Ex. C-38.  Costco records show that

Armijo continues to be an employee on leave.  Takahashi Decl. ¶ 17.  In his 2020 tax return, Armijo represented that his occupation is Member Service.  See Def. Ex. C-55.

Armijo testified that he is not able to work in any position at Costco and he has not been released to return to work by his doctor.  Def. Ex. D (Armijo Depo. IV) at 373:4-23, 374-376:15.

## II.  Procedural Posture

On November 29, 2017, Armijo filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") asserting that he had been subjected to disability discrimination and retaliation in violation of the Americans with Disabilities Act of 1990 (the "ADA").  Zorc Decl. Ex. B, ECF No. 39-4.  He asserted that the discrimination and retaliation took place between November 2, 2016, and May 23, 2017, and he checked the box signaling a "continuing violation." Id.  Armijo's EEOC charge did not check the box indicating that he wanted the claim filed with the Hawai`i Civil Rights Commission ("HCRC"), id., and no charge was ever filed.  The EEOC ultimately denied the charges and issued its dismissal and right-to-sue-letter on June 7, 2019.  Zorc Decl. Ex. D, ECF No. 39-6.

Armijo filed this lawsuit three months later.  ECF No. 1.  In light of certain deficiencies in the original complaint

and then the First Amended Complaint, Armijo filed his Second Amended Complaint on February 21, 2020.  ECF No. 13.  Costco filed its Motion for Partial Dismissal of Second Amended Complaint Filed February 21, 2020 [Doc 13] and Motion for More Definite Statement on October 30, 2020.  ECF No. 39.

On April 2, 2021, this Court granted Costco's Motion for Partial Dismissal of the Second Amended Complaint and Motion for More Definite Statement, ECF No. 55 ("Prior Order").  The Court found that Armijo's EEO complaint covered only Costco's alleged failure to accommodate Armijo's disability, as well as any related disability discrimination or retaliation, and that Armijo has not exhausted his claims as to a hostile work environment.  Prior Order at 15.  The Court further dismissed with prejudice for failure to exhaust any discrimination or retaliation claims grounded in state law, dismissed with prejudice for failure to exhaust any race- or sex-related discrimination, retaliation, or hostile work environment claims based on Title VII, and ordered Armijo to file an amended complaint with a more definite statement of his claims.  Id. at 20.

On August 2, 2021, Armijo filed his Third Amended Complaint, ECF No. 72.  On August 16, 2021, Costco filed its Motion to Dismiss Plaintiff's Third Amended Complaint, ECF No. 73.  On November 10, 2021, Armijo filed what is entitled his

11

Opposition to Defendant Costco Wholesale Warehouse, Inc's Motion to Dismiss Plaintiff's Third Amended Complaint, however Plaintiff simply attached a Fourth Amended Complaint as his Opposition. <u>See</u> ECF Nos. 95, 96. As a result, the Court vacated the hearing and directed Armijo to instead file a motion to amend his complaint. ECF No. 96.

On December 8, 2021, Armijo filed his Fourth Amended Complaint, ECF No. 105. Costco then filed its Motion for Summary Judgment ("the Motion"), ECF No. 120, and its CSF, ECF No. 121, on February 14, 2022. Armijo filed his Opposition, ECF No. 128, on March 22, 2022. Armijo did not file a CSF. On March 31, 2022, Costco filed its Reply, ECF No. 131. A hearing on the Motion was held on April 14, 2022.

<b><u>STANDARD</u></b>

Summary judgment is proper where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Rule 56(a) mandates summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986); <u>see also</u> <u>Broussard v. Univ. of Cal.</u>, 192 F.3d 1252, 1258 (9th Cir. 1999).

"A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact." Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007) (citing Celotex, 477 U.S. at 323, 106 S. Ct. at 2553); see also Jespersen v. Harrah's Operating Co., 392 F.3d 1076, 1079 (9th Cir. 2004). "When the moving party has carried its burden under Rule 56[(a)] its opponent must do more than simply show that there is some metaphysical doubt as to the material facts [and] come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 586–87, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986) (citation and internal quotation marks omitted and emphasis removed); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986) (stating that a party cannot "rest upon the mere allegations or denials of his pleading" in opposing summary judgment).

"An issue is 'genuine' only if there is a sufficient evidentiary basis on which a reasonable fact finder could find for the nonmoving party, and a dispute is 'material' only if it could affect the outcome of the suit under the governing law." In re Barboza, 545 F.3d 702, 707 (9th Cir. 2008) (citing

Anderson, 477 U.S. at 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202).

When considering the evidence on a motion for summary judgment,

the court must draw all reasonable inferences on behalf of the

nonmoving party.  Matsushita Elec. Indus. Co., 475 U.S. at 587,

106 S. Ct. 1348, 89 L. Ed. 2d 538; see also Posey v. Lake Pend

Oreille Sch. Dist. No. 84, 546 F.3d 1121, 1126 (9th Cir. 2008)

(stating that "the evidence of [the nonmovant] is to be

believed, and all justifiable inferences are to be drawn in his

favor" (internal citation and quotation omitted)).

## I.   Special Considerations for Pro Se Litigants

Pro se pleadings and briefs are to be construed

liberally.  Balisteri v. Pacifica Police Dep't., 901 F.2d 696

(9th Cir. 1990).  "[A] pro se complaint, however inartfully

pleaded, must be held to less stringent standards than formal

pleadings drafted by lawyers."  Erickson v. Pardus, 551 U.S. 89,

94, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007) (quoting Estelle

v. Gamble, 429 U.S. 97, 106, 97 S. Ct. 285, 50 L. Ed. 2d 251

(1976)).  The Court should act with leniency toward pro se

litigants when they technically violate a rule.  Draper v.

Coombs, 792 F.2d 915, 924 (9th Cir. 1986); Motoyama v. Haw.

Dep't of Transp., 864 F. Supp. 2d 965, 975 (D. Haw. 2012).  That

said, pro se litigants are "not excused from knowing the most

basic pleading requirements."  Am. Ass'n of Naturopathic

Physicians v. Hayhurst, 227 F.3d 1104, 1107 (9th Cir. 2000).

Pro se litigants must follow the same rules of procedure that govern other litigants.  Motoyama, 864 F. Supp. 2d at 975.

Non-prisoner pro se litigants are subject to the same rules at summary judgment as those represented by counsel. Jacobson, 790 F.2d at 1362; Rand v. Rowland, 154 F.3d 952 (9th Cir. 1998).


## DISCUSSION

As discussed above, the Court must consider and decide Costco's summary judgment motion seeking dismissal of Armijo's claims for (1) disability discrimination (Count I), including failure to accommodate and retaliation, (2) hostile work environment (Count II), and (3) punitive damages.  After initially addressing the exhaustion of Armijo's claims, the Court addresses each argument in turn.

## I.   Exhaustion

As an initial matter, the Court addresses Costco's argument that Armijo's claims regarding conduct that occurred prior to February 2, 2017 are unexhausted.  Mot. at 10.

"Before filing an ADA suit, a plaintiff must timely file a discrimination charge with the EEOC."  Douglas v. California Dep't of Youth Auth., 271 F.3d 812, 823 n.12 (9th Cir. 2001), amended, 271 F.3d 910 (9th Cir. 2001) (citing 42 U.S.C. § 12117(a)).  A charge is timely if it is filed with the

EEOC within 180 days after the alleged violation or, if the charge is filed with an appropriate state agency, within 300 days after the alleged violation.  Id. (citing 42 U.S.C. § 2000e-5(e)).  Under the ADA, claims that are based on "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges" because "[e]ach discrete discriminatory act starts a new clock for filing charges alleging that act."  Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113, 122 S. Ct. 2061, 2072, 153 L. Ed. 2d 106 (2002).

As discussed above and in the Court's Prior Order, Armijo timely filed a charge with the EEOC on November 29, 2017 as to his disability discrimination claims.  Prior Order at 12. Armijo asserted that the discrimination and retaliation took place between November 2, 2016, and May 23, 2017, and he checked the box signaling a "continuing violation."  Zorc Decl. Ex. B, ECF No. 39-4.  Armijo's narrative of his allegations focused on his disability and Costco's alleged failure to provide reasonable accommodations.  Id.

In its Prior Order, this Court ruled that the factual allegations in Armijo's EEOC complaint related exclusively to Armijo's disability and Costco's alleged failure to provide reasonable accommodations:

> The Court thus finds that Armijo's EEOC complaint covers only Costco's alleged failure to accommodate Armijo's disability, as well as any related disability discrimination or retaliation. Armijo has not exhausted his claims as to a hostile work environment, sexual harassment, and any form of race or sex discrimination or retaliation to the extent asserted in the 2AC.

Prior Order at 15. Therefore, Armijo had not exhausted his hostile work environment claims and the Court thus dismissed the claims. Id. at 20. The Court likewise finds that Armijo's hostile work environment claim in the 4AC is unexhausted. In any event, as discussed infra, Costco is entitled to summary judgment on the merits of Armijo's hostile work environment claim.

### a. Continuing Violation Doctrine

In its Motion, Costco argues that the continuing violation doctrine does not apply because Armijo has not identified evidence of a continuing violation of discrimination. Mot. at 11. The "continuing violations doctrine" allows a court, in some instances, to consider alleged unlawful behavior that would otherwise be time-barred. Morgan, 536 U.S. at 114, 122 S. Ct. at 2072. Under the ADA, claims that are based on "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges" because "[e]ach discrete discriminatory act starts a new clock for filing charges alleging that act." Id. at 113, 2072. The Supreme Court has explained that a discrete act

consists of an unlawful practice that "occurred" on the day it

"happened," which includes, for example, "termination, failure

to promote, denial of transfer, or refusal to hire."  Id. at

114, 2073.  On the other hand, hostile work environment claims,

by their [v]ery nature involve[] repeated conduct."  Id. at 115,

2073.  Such a claim:

> is composed of a series of separate acts that
> collectively constitute one "unlawful employment
> practice."  42 U.S.C. § 2000e-5(e)(1).  The timely filing
> provision only requires that a . . . plaintiff file a
> charge within a certain number of days after the unlawful
> practice happened. It does not matter, for purposes of
> the statute, that some of the component acts of the
> hostile work environment fall outside the statutory time
> period.  Provided that an act contributing to the claim
> occurs within the filing period, the entire time period
> of the hostile environment may be considered by a court
> for the purposes of determining liability.

Id. at 117, 2074.  Importantly, however, "discrete

discriminatory acts are not actionable if time barred, even when

they are related to acts alleged in timely filed charges."  Id.

at 113, 2072; see also Porter v. California Dep't of

Corrections, 419 F.3d 885, 893 (9th Cir. 2005).  In determining

whether particular events are part of the same actionable

hostile work environment claim, the Court considers "whether

they were 'sufficiently severe or pervasive,' and whether the

earlier and later events amounted to 'the same type of

employment actions, occurred relatively frequently, [or] were

perpetrated by the same managers.'"  Porter, 419 F.3d at 893 (quoting Morgan, 536 U.S. at 116, 122 S. Ct. at 2061).

Here, Armijo asserts that Costco created a hostile work environment "based upon disability discrimination" and that "managers and supervisors ridiculed [Armijo] for making a workers' compensation claim."  4AC ¶¶ 31, 32.  Armijo does not, however, provide any further clarification in his 4AC as to which specific acts comprise his hostile work environment claim.

In sum, the Court concludes that Morgan limits the use of the continuing violation doctrine only to Armijo's ADA hostile work environment claim.  See Beckmann v. Ito, 430 F. Supp. 3d 655, 673 (D. Haw. 2020); Aoyagi v. Straub Clinic & Hospital, Inc., 140 F. Supp. 3d 1043, 1054 (D. Haw. 2015).  In any event, as discussed infra, Costco is entitled to summary judgment on the merits of Armijo's ADA hostile work environment claim.

## II.  Disability Discrimination Claim (Count I)

Count I of Armijo's 4AC alleges that Costco discriminated against him on the basis of his disability in violation of the ADA.  4AC ¶¶ 24-29.  Though unclear from the face of Armijo's 4AC, there appears to be three bases for his disability discrimination claim: (1) that Armijo was suspended from employment as a result of his disability, (2) Armijo was denied reasonable accommodation for his disability, and (3)

19

Armijo was subjected to retaliation for filing his workers' compensation claim.  4AC ¶¶ 15, 18, 21.  The Court addresses Armijo's Count I allegations in turn.

### b. Prima Facie Case of Discrimination

The ADA prohibits certain employers from discriminating against a "qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."  42 U.S.C. § 12112(a).  Discrimination under the ADA includes the failure to make a "reasonable accommodation" unless the employer can demonstrate that the accommodation would impose an "undue hardship" on its business.  Id. § 12112(b)(5)(A).

Under the ADA, Armijo bears the burden of proving that (1) he is disabled within the meaning of the statute, (2) he is a "qualified individual" within the meaning of the ADA, and (3) he suffered an adverse employment action because of his disability.  Bates v. United Parcel Serv., Inc., 511 F.3d 974, 988 (9th Cir. 2007) (en banc).  Costco does not dispute that Armijo is disabled within the meaning of the statute.[2]

---

[2] The ADA defines "disability" as, inter alia, "a physical or mental impairment that substantially limits one or more major life activities of [an] individual."  42 U.S.C. § 12102(1)(A).

If Armijo establishes his prima facie case, the burden shifts to Costco to offer a legitimate nondiscriminatory reason for the alleged adverse employment action.  See Curley v. City of N. Las Vegas, 772 F.3d 629, 632 (9th Cir. 2014) (ADA discrimination claims are subject to the burden-shifting framework outlined in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973)).  Once Costco does so, the burden then shifts back to Armijo to "prove that the reason given by the employer was pretextual."  Id.

### i. Qualified Individual

Armijo carries the initial burden of establishing that he is a qualified individual as part of his prima facie disability discrimination case.  Hutton v. Elf Atochem N. Am., Inc., 273 F.3d 884, 891 (9th Cir. 2001); see Bates, 511 F.3d at 988 ("[U]nder the ADA, an employee bears the ultimate burden of proving that [she] is . . . a qualified individual with a disability . . . .") (internal quotation marks omitted).

The ADA defines a "qualified individual" as someone "who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires."  42 U.S.C. § 12111(8).  However, the EEOC has promulgated 29 C.F.R. § 1630.2(m) to further elaborate upon the meaning of the term "qualified."  Anthony v. Trax Int'l Corp., 955 F.3d 1123, 1127-28 (9th Cir. 2020).  That

subsection sets forth a two-step inquiry for determining whether the individual is qualified.

A court first determines whether the individual satisfies the prerequisites of the job; more specifically, whether "the individual satisfies the requisite skill, experience, education and other job-related requirements of the employment position such individual holds or desires." 29 C.F.R. § 1630.2(m). At step two, a court determines whether, "with or without reasonable accommodation," the individual is able to "perform the essential functions of such position." Id.

First, Armijo never possessed the management-level experience that he misrepresented in his resume. Armijo misrepresented in his resume to Costco, inter alia, that (1) he had a college degree, Def Ex. A (Armijo Depo. I) at 17:20-24 ("Q:[D]id you attend school at California State University, Long Beach? A: [N]o"), (2) he had experience in sales and management of vacation rental homes, id. at 28:20-32:16 ("I didn't work a job"); id. at 31:2-3 ("I am not a manager, nor was I ever a manager"), (3) he worked as a manager at a recycling company, id. at 33:1-14 ("I wasn't the manager"), and (4) he was an account manager for a precious metals business, id. at 20:22-23:1 ("I was interning"); Def. Ex. A-1.

Chaparro, the Costco general manager of the No. 140 Warehouse, who hired Armijo, declared if she had known Armijo

did not have the experience represented on his resume, she would not have considered him qualified for either the Loss Prevention position as security for the No. 140 Warehouse or the Member Service position and would not have hired him.  Chaparro Decl. ¶ 23.  Chaparro explained that "[Armijo's] resume listed management-type positions, which appeared to indicate he had the requisite self-initiative, data-entry, and observational skills necessary to fulfill these positions.  Without these management-type roles, I would not have considered [Armijo] qualified for either Loss Prevention or Member Service . . . ."  Id. Moreover, the Court finds it is unlikely Costco would have considered Armijo a qualified individual for, or would have hired (or retained once the misrepresentations were discovered) Armijo for the Loss Prevention or Member Service positions in view of his dishonesty in falsifying his resume.

It is notable that Armijo feels Chaparro is the only fair and good manager at the No. 140 Warehouse.  See Opp. at 5.

The fact that Costco learned only in discovery that Armijo misrepresented these facts is immaterial to the analysis currently before the Court.  See Anthony, 955 F.3d at 1129 ("[The regulation] does not limit the qualification determination to the facts known to the employer at the time of the challenged employment action.").

Second, following the doctor's note dated May 26, 2017, received by Costco on June 10, 2017, allowing Armijo to work but stating that he could not lift/push/pull/carry <u>any weight</u>, Def. Ex. B-19, Armijo never returned to work for Costco notwithstanding other doctor's notes allowing him to "return to work full duty," Def. Ex. C-36, <u>see also</u> Def. Ex. C-45. Armijo claimed his doctor had never permitted him to return to work and his disability prevented him from doing so, and he requested a leave of absence-which is still in effect today. <u>See</u> Def. Ex. C-38.

The Court finds that Armijo is therefore not a "qualified individual" within the meaning of the statute and that Armijo has not established a genuine issue of material fact whether he is a "qualified individual."

### ii. Adverse Employment Action Because of Disability

Even assuming arguendo Armijo is a qualified individual, he cannot establish that he suffered an adverse action because of his disability.

Armijo alleges that he was "suspended" during his May 23, 2017 meeting with Komura. 4AC ¶¶ 18, 21, 22. While Armijo is correct that a suspension can constitute an adverse employment action, <u>Raad v. Fairbanks N. Star Borough Sch. Dist.</u>,

323 F.3d 1185, 1196 (9th Cir. 2003), Costco argues that Armijo was instead placed on a leave of absence.[3/]

Komura stated that at this May 2017 meeting, Armijo was asked to obtain additional information from his doctors as to his restrictions before Costco could schedule him for work. Komura Decl. ¶ 13. After Costco received the May 26, 2017 doctor's note that Armijo could not push/pull or lift/carry any weight, Def. Ex. B-19, Costco determined there were no available positions that could accommodate the restriction, and accordingly Armijo was placed on a leave of absence as a reasonable accommodation. Shimaoka-Lopez Decl. ¶ 23; Def. Ex. B-20; Def. Ex. Q.

Rather than an adverse employment action, unpaid medical leave may be a reasonable accommodation under the ADA. See 29 C.F.R. Part 1630, App. (1999) (discussing 29 U.S.C. § 1630.2(o)). Armijo himself requested a leave of absence. See Def. Ex. C-38. Costco records show that Armijo continues to be an employee on a leave of absence. See Shimaoka-Lopez Decl. ¶ 33; Takahashi Decl. ¶ 17. Indeed, in his 2020 tax return, Armijo represented that his occupation is Member Service. Def.

---

[3/]   The Court notes that while it is evident that Armijo was not suspended after his May 23, 2017 meeting with Komura, Armijo was placed on a 3-day unpaid suspension on February 23, 2016 after incurring his tenth unexcused absence. See Def. Ex. A (Armijo Depo. I) at 49:7-50:20; Def. Ex. A-5.

Ex. C-55.  Furthermore, Armijo's Opposition states that he

"remains on a FORCED LEAVE OF ABSENCE."  Opp. at 27.

Armijo's Opposition also argues that he was

discriminated against when on September 17, 2016 he was removed

from the twelve-week ICEP program after only four weeks.  Opp.

at 6-7.  However, Armijo was removed from the program to return

to work at Costco, after Armijo's doctor released him to work

four-hour shifts.  Chaparro Decl. ¶¶ 16-18.  Rather than being

discriminatory, it appears this was a reasonable accommodation

for his disability.[4/]

Further, Armijo cannot argue the correction of the

erroneous change of position from Loss Prevention to Member

Service constitutes an adverse employment action as a result of

his disability.  Due to an internal error, Costco did not

realize Armijo was continuing to receive the Loss Prevention pay

rate until Takahashi discovered the oversight in May of 2017,

after which it was corrected.  Takahashi Decl. ¶ 10.  Armijo's

Opposition affirms this timing, stating that "[t]he Loss

Prevention Job was eliminated Dec 31, 2015 and the first day of

working Member Services was Jan 1st of 2016."  Opp. at 19; see

also Def. Ex. B (Armijo Depo. II) at 146:1-8 ("[T]he last day of

---

[4/]  The Court also notes that any claim based on this September 17, 2016 incident is time-barred as it occurred prior to February 2, 2017 (which is 300 days prior to November 29, 2017, when Armijo filed his charge with the EEOC).

loss prevention I want to say was December 31st, 2015 . . .").
Costco's overpayment to Armijo because of this clerical error
was forgiven.  Takahashi Decl. ¶ 12.

Moreover, Costco has shown that the Loss Prevention
position was eliminated because it was not cost-effective; that
is, the number of thefts remained just as high as before Armijo
assumed the position.  Chaparro Decl. ¶ 10.  Chaparro and the
Loss Prevention Manager at the time determined this loss
resulted from thieves recognizing Armijo in his security
position as being a Costco security employee, and thus
successfully avoided him.  Id.  Consequently, Costco's switching
Armijo to the Member Service position was not an adverse
employment action caused by his disability.

Because Armijo has failed to show either that he was a
qualified individual or that he suffered an adverse employment
action as a result of his disability, he is unable to establish
a prima facie case of discrimination.

### iii.  Pretext

Even assuming arguendo that Armijo was able to
establish a prima facie case of discrimination, the Court finds
that Costco has submitted evidence establishing legitimate non-
discriminatory reasons for the alleged adverse employment action
and that Armijo has provided no evidence to rebut Costco's non-
discriminatory reasons.  Moreover, the Court concludes that a

27

leave of absence was the only available accommodation based on Armijo's restrictions.

"A plaintiff may establish pretext either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." Dep't of Fair Emp. & Hous. v. Lucent Techs., Inc., 642 F.3d 728, 746 (9th Cir. 2011) (quoting Godwin v. Hunt Wesson, Inc., 150 F.3d 1217, 1221 (9th Cir. 1998)).  If a plaintiff uses circumstantial evidence to satisfy this burden, such evidence "must be specific" and "substantial."  Id.

Armijo has not offered evidence that would carry his burden of showing that Costco's justification for placing him on medical leave or correcting his pay rate was pretextual.  Armijo fails to identify evidence that would either directly persuade the Court that a discriminatory reason more likely motivated Costco or indirectly demonstrate that Costco's proffered explanation is unworthy of credence.  See Campbell v. Hawaii Dep't of Educ., 892 F.3d 1005, 1022 (9th Cir. 2018).

### c. Reasonable Accommodations

Discrimination under the ADA includes an employer's failure to make a reasonable accommodation.  Dunlap v. Liberty Nat. Prods., Inc., 878 F.3d 794, 799 (9th Cir. 2017).  In his

Fourth Amended Complaint, Armijo alleges he was "denied a reasonable accommodation for physical disabilities."  4AC ¶ 15.

"The ADA treats the failure to provide a reasonable accommodation as an act of discrimination if the employee is a 'qualified individual,' the employer receives adequate notice, and a reasonable accommodation is available that would not place an undue hardship on the operation of the employer's business." Snapp v. United Transp. Union, 889 F.3d 1088, 1095 (9th Cir. 2018) (citing 42 U.S.C. § 12112(b)(5)(A)).  "Once an employer becomes aware of the need for accommodation, that employer has a mandatory obligation under the ADA to engage in an interactive process with the employee to identify and implement appropriate reasonable accommodations."  Humphrey v. Mem'l Hosps. Ass'n, 239 F.3d 1128, 1137 (9th Cir. 2001).

This interactive process requires: "(1) direct communication between the employer and the employee to explore in good faith the possible accommodations; (2) consideration of the employee's request; and (3) offering an accommodation that is reasonable and effective."  Zivkovic v. Southern California Edison Co., 302 F.3d 1080, 1089 (9th Cir. 2002); see also 29 C.F.R. § 1630.2(o)(3) ("T[he interactive] process should identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations.").  "Liability for failure to provide

reasonable accommodations ensues only where the employer bears responsibility for the breakdown" in the interactive process. Zivkovic, 302 F.3d at 1089. The employer need only provide a reasonable accommodation, not necessarily the accommodation that the employee requests or prefers. Id.

Here, Armijo alleges that he was "denied reasonable accommodation for his physical disabilities" when he "returned to light duty in September 2016, but was not accommodated for his injuries for the restrictions given by his doctor." 4AC ¶ 6. Due to this alleged failure to accommodate, Armijo "was re-injured on March 16, 2017" and was "suspended from work in May 2017." Id. ¶¶ 7-8.

In March of 2017, Costco was engaged in the interactive process, seeking to have Dr. Daniels identify the number of hours per day or week that Armijo could work so that it could accommodate the restriction. Shimaoka-Lopez Decl. ¶ 15. Costco received no such response. See Allen v. Pac. Bell, 348 F.3d 1113, 1115-16 (9th Cir. 2003) (affirming grant of summary judgment to employer where employee did not submit requested medical information and did not appear for a keyboard test that employer requested to determine appropriate accommodation).

Insofar as Armijo alleges that a supervisor asked him to clean up a soda spill in May of 2017 and therefore

disregarded Dr. Daniels's March 2017 note, Costco argues that the note states that Armijo is to "[a]void repetitive squatting, kneeling, and stair climbing," but not that he could not bend at all.  See Def. Ex. C-31.  When Costco received a medical note dated May 26, 2017 stating that Armijo had a lifting/pushing/pulling/carrying restriction of zero pounds, Def. Ex. B-19, Costco did not have any position that could accommodate such a restriction.  Shimaoka-Lopez Decl. ¶¶ 22-23. Indeed, in July of 2018, Armijo requested a leave of absence. See Def. Ex. C-38.

Moreover, a reasonable accommodation must enable the employee to perform the duties of the position.  Barnett, 228 F.3d at 1115; see also 29 C.F.R. § 1630.2(o)(1)(ii) (defining "reasonable accommodation" as "[m]odifications or adjustments to the work environment, or to the manner or circumstances under which the position held or desired is customarily performed, that enable an individual with a disability who is qualified to perform the essential functions of that position").  Reasonable accommodations may include "job restructuring; part-time or modified work schedules; reassignment to a vacant position; . . . and other similar accommodations for persons with disabilities."  42 U.S.C. § 12111(9)(B); see also 29 C.F.R. § 1630.2(o)(2)(ii).

Armijo has not offered evidence that he could have performed any work given his significant limitations. When Komura spoke to Armijo to discuss his leave, he indicated he could work his Member Service position by standing at the entry/exit doors. Komura Decl. ¶¶ 10, 15. However, this would have required Costco to eliminate the essential functions of the position, as the "strength" requirement for the Member Service position necessitates that employees be able to lift/carry up to 10 pounds and to push/pull up to 21-50 pounds. Def. Ex. E; see Samper v. Providence St. Vincent Med. Ctr., 675 F.3d 1233, 1241 (9th Cir. 2012) (holding that a nurse was not entitled to a reasonable accommodation that exempted her from the essential function of regular attendance). Komura explained to Armijo that Costco did not have any position available that could accommodate his restriction of no pushing/pulling/lifting any weight. Komura Decl. ¶ 15.

In sum, the "duty to accommodate" is a "continuing duty that is not exhausted by one effort." McAlindin v. Cty. of San Diego, 192 F.3d 1226, 1237 (9th Cir. 1999). That is, Costco was required to engage with Armijo in addressing his concerns after his injury. See Humphrey, 239 F.3d at 1138 ("[T]he employer's obligation to engage in the interactive process extends beyond the first attempt at accommodation and continues when the employee asks for a different accommodation or where

32

the employer is aware that the initial accommodation is failing and further accommodation is needed."). The Court finds Costco has established there is no genuine issue of material fact that Costco did engage in this interactive process and that Costco reasonably accommodated Armijo's disability.

### d. Retaliation

Armijo alleges he was "subjected to retaliation for being injured at work and filing a workers' compensation claim by being ridiculed and harassed by managers and supervisors and suspended in May 2017." 4AC ¶ 21.

To establish a prima facie case of retaliation under the ADA, an employee must show that: (1) he or she engaged in a protected activity; (2) suffered an adverse employment action; and (3) there was a causal link between the two. Pardi v. Kaiser Found. Hosps., 389 F.3d 840, 849 (9th Cir. 2004); Barnett, 228 F.3d at 1121 (adopting the Title VII retaliation framework for ADA retaliation claims).

If the employee establishes a prima facie case, the employee will avoid summary judgment unless the employer offers legitimate reasons for the adverse employment action, whereupon the burden shifts back to the employee to demonstrate a triable issue of fact as to whether such reasons are pretextual. See Brooks v. City of San Mateo, 229 F.3d 917, 928 (9th Cir. 2000).

In response to Armijo's retaliation claim, Costco argues that Armijo did not engage in protected activity when he filed his workers' compensation claim. Mot. at 22. As a general matter, pursuing one's rights under the ADA constitutes protected activity. Pardi, 389 F.3d at 850 (citing McAlindin, 192 F.3d at 1238 (stating that "vigorously asserting [one's] rights" under the ADA and other state and federal discrimination laws constitutes protected activity); Hashimoto v. Dalton, 118 F.3d 671, 679-80 (9th Cir. 1997) (determining that meeting with an Equal Employment Opportunity counselor to discuss sex and race discrimination constitutes protected activity)); Jablonski v. WalMart Inc., 720 F. App'x 865, 866 (9th Cir. 2018) ("Notifying WalMart of her return to Maximum Medical Improvement was part of the process of Jablonski returning to work, not a pursuit of her rights under the ADA.").

The Ninth Circuit has not yet ruled whether filing a workers' compensation claim qualifies as protected activity under the ADA, but "[n]early every court that has confronted the issue has held that the filing of a workers' compensation claim in itself is not protected activity under the ADA—in other words, that an ADA-based claim of retaliation for the filing of a workers' compensation claim cannot stand." Arnold v. Pfizer, Inc., 970 F. Supp. 2d 1106, 1141 (D. Or. 2013) (quoting Kendall v. Donahoe, 913 F.Supp.2d 186, 193 (W.D. Pa. 2012)); see also

<u>Williams v. City of Las Vegas</u>, 359 Fed. App'x 753, 754-755 (9th Cir. 2009) (deciding the motion on other grounds and thus not "reach[ing] the question of whether or not the filing of a workers' compensation claim is a protected activity under the ADA . . ."). The Court is persuaded by the sound reasoning in those cases and finds that filing a workers' compensation claim is not a protected activity under the ADA.

In any event, Armijo is unable to show causation. For such a retaliation claim, the plaintiff must establish that the protected activity was a but-for cause of the alleged adverse action by the employer. <u>Univ. of Texas Sw. Med. Ctr. v. Nassar</u>, 570 U.S. 338, 360, 133 S. Ct. 2517, 2533, 186 L. Ed. 2d 503 (2013); <u>see also</u> <u>Lombardi v. Castro</u>, 675 F. App'x 690, 691-92 (9th Cir. 2017). Temporal proximity between an employer's knowledge of protected activity and an adverse employment action is sufficient to establish a prima facie case, but the temporal proximity must be "very close." <u>Clark Cty. Sch. Dist. v. Breeden</u>, 532 U.S. 268, 273, 121 S. Ct. 1508, 1511, 149 L. Ed. 2d 509 (2001); <u>see, e.g.</u>, <u>Govan v. Sec. Nat. Fin. Corp.</u>, 502 F. App'x 671, 674 (9th Cir. 2012) (6-month period insufficient); <u>Swan v. Bank of Am.</u>, 360 F. App'x 903, 906 (9th Cir. 2009) (4-month period insufficient). The Ninth Circuit has "caution[ed] that a specified time period cannot be a mechanically applied criterion," because "[a] rule that any period over a certain

time is per se too long (or, conversely, a rule that any period under a certain time is per se short enough) would be unrealistically simplistic." Coszalter v. City of Salem, 320 F.3d 968, 976 (9th Cir. 2003).

Here, the alleged protected activity-Armijo filing his workers' compensation claim-occurred in July of 2016. Chaparro Decl. ¶ 13; 4AC ¶ 21; Opp. at 4, 6, 20. Armijo's alleged termination or suspension occurred on May 23, 2017. Def. Ex. B (Armijo Depo. II) at 162:20-25, 163:6-14, 165:7-12, Komura Decl. ¶ 13. Such a timeline (some 10 months) by itself suggests no causality.

Further, as discussed supra, Armijo has not shown any adverse employment action. Because Armijo has not submitted any evidence that he has engaged in a protected activity or that there was a causal connection between the alleged protected activity (Armijo's filing of the workers' compensation claim) and the adverse employment action, he has failed to establish a prima facie case of retaliation. Furthermore, as discussed supra, even if Armijo had established a prima facie case of retaliation, Costco has given legitimate reasons for its employment decisions and Armijo has failed to show pretext. The Court finds no reasonable jury could find to the contrary.

The Court therefore GRANTS Costco summary judgment with respect to Count I of Armijo's 4AC.

36

## III. Hostile Work Environment Claim (Count II)

In Count II of Armijo's 4AC, he alleges that Costco's "Manager and Supervisor created a hostile work environment based upon disability discrimination by the actions alleged previously," that Costco's "managers and supervisors ridiculed [Armijo] for making a workers' compensation claim," and "threatened" Armijo if he filed such a claim.  4AC ¶¶ 31-32.

First, as discussed supra, the Court has already found in its Prior Order that Armijo has not exhausted his hostile work environment claims, and for that reason the claims were dismissed.  Prior Order at 15, 20.  Second, nevertheless the Court addresses the merits of Armijo's hostile work environment claim in the 4AC, and finds that the relevant conduct is insufficient to constitute a hostile work environment.  The Court thus GRANTS Costco summary judgment on that claim.

The Ninth Circuit has not ruled on the issue of whether a hostile work environment claim can be brought under the ADA.  See McIntyre v. Eugene Sch. Dist. 4J, 976 F.3d 902, 916 (9th Cir. 2020) (declining to decide the issue of whether a hostile work environment claim is actionable under the ADA, but noting that every other circuit court to address the issue has held such a claim is actionable) (citing discussion in Ford v. Marion Cty. Sheriff's Office, 942 F.3d 839, 852 (7th Cir. 2019)).  To the extent that such a claim exists, its elements

are similar to the elements of a Title VII hostile work environment claim.  See Ford, 942 F.3d at 856 (listing the elements of a claim for hostile work environment based on disability).

A hostile work environment claim relies on a series of separate acts that collectively are so severe and offensive that they alter the conditions of plaintiff's employment.  Williams v. Modly, 796 Fed. App'x 378, 380-81 (9th Cir. 2020) (citing Morgan, 536 U.S. at 117, 122 S. Ct. at 2061.  "Not every insult or harassing comment will constitute a hostile work environment."  Ray v. Henderson, 217 F.3d 1234, 1245 (9th Cir. 2000).  The work environment must be both subjectively and objectively perceived as abusive.  Campbell, 892 F.3d at 1016-17.  A court considers all the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."  Harris v. Forklift Sys., Inc., 510 U.S. 17, 23, 114 S. Ct. 367, 371, 126 L. Ed. 2d 295 (1993).  "[T]he required showing of severity or seriousness of the harassing conduct varies inversely with the pervasiveness or frequency of the conduct."  Brooks, 229 F.3d at 926 (quoting Ellison v. Brady, 924 F.2d 872, 878 (9th Cir. 1991)).

The information Armijo has provided regarding the alleged hostile work environment is mild and vague at best. Armijo alleges that Costco managers "ridiculed" him for "making a workers' compensation claim" and "threatened" his continued employment if he did so.  4AC ¶ 32.  Specifically, Armijo testified in his deposition that Lockwood asked Armijo to fill out a "bumps and bruises" form to report his workplace injury, Def. Ex. A (Armijo Depo. I) at 50:24-25; Def Ex. D (Armijo Depo. IV) at 381:15-17; a supervisor told Armijo "you're in the gray area" and "take one for the team, we're short staffed and people are on vacation," Def Ex. B (Armijo Depo. II) at 160:6-11; Komura yelled at Armijo for not responding to his radio while he was performing outside security on May 7, 2017, id. at 101:13-102:2; a supervisor loudly asked him "You can't kneel?" regarding the cleanup of a soda spill at work, id. at 114:11-115:10; Def Ex. C (Armijo Depo. III) at 239:19-240:7; a supervisor asked for his whereabouts while Armijo was in the restroom, Def. Ex. D (Armijo Depo. IV) at 383:1-13; and a co-worker "threw [Armijo] a shoulder and walked into [him];" Def. Ex. B (Armijo Depo. II) at 172:12-173:4.

Even when considering all of the alleged incidents, the acts raised by Armijo were not so serious or pervasive as to alter the conditions of Armijo's employment.  See Jura v. Cty. of Maui, Civ. No. 11-00338 SOM/RLP, 2012 WL 5187845, at *7 (D.

Haw. Oct. 17, 2012) ("Title VII is not a general civility code for the American workplace.") (internal citation and quotation marks omitted); Succar v. Dade Cty. Sch. Bd., 229 F.3d 1343, 1345 (11th Cir. 2000) (stating that "[p]ersonal animosity is not the equivalent of [] discrimination," and that a plaintiff "cannot turn a personal feud into a [] discrimination case."). Indeed, many of the alleged incidents do not appear to be disability-related.

The Court finds there is no genuine issue of material fact as to whether a hostile environment existed here.

For the foregoing reasons, the Court GRANTS Costco's summary judgment motion with respect to Count II of Armijo's 4AC.

**IV.   Punitive Damages**

Finally, the Court addresses Armijo's claim for punitive damages.  Punitive damages serve to punish the defendant for wrongful conduct and to deter the defendant and others from repeating that wrong.  See Cooper Indus., Inc. v. Leatherman Tool Group, Inc., 532 U.S. 424, 432, 121 S. Ct. 1678, 149 L. Ed. 2d 674 (2001).  A jury "may be permitted to assess punitive damages in an action under § 1983 when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the

federally protected rights of others." <u>Smith v. Wade</u>, 461 U.S. 30, 56, 103 S. Ct. 1625, 75 L. Ed. 2d 632 (1983).

Costco argues that Armijo has failed to establish the malicious, wanton or oppressive conduct necessary to support a claim for punitive damages.  The Court agrees, especially given that the Court has found no violation of any laws.  <u>See</u> <u>Mullaney v. Hilton Hotels Corp.</u>, 634 F. Supp. 2d 1130, 1152 (D. Haw. 2009) ("[A] claim for punitive damages is not an independent tort, but is purely incidental to a separate cause of action.") (quoting <u>Ross v. Stouffer Hotel Co.</u>, 76 Hawai`i 454, 466, 879 P.2d 1037, 1049 (1994)).  The Court GRANTS Costco summary judgment with regard to Armijo's claim for punitive damages.

## CONCLUSION

For the foregoing reasons, the Court GRANTS Costco's Motion for Summary Judgment, ECF No. 120, and dismisses all of Armijo's claims.  There being no remaining claims in this case, the Clerk's Office is DIRECTED to enter judgment and close this case.

IT IS SO ORDERED.

DATED: Honolulu, Hawai`i, April 28, 2022.



Alan C. Kay
Sr. United States District Judge

41

<u>Armijo v. Costco Wholesale Warehouse, Inc.</u>, Civ. No. 19-00484 ACK-RT, Order Granting Defendant Costco's Motion for Summary Judgment (ECF No. 120).